## In re CO-OPERATIVE LEAGUE OF AMERICA et al.

## WILLIAMS v. ADAMS.

Circuit Court of Appeals, Seventh Circuit. December 13, 1927.

### No. 3862.

1. **Bankruptcy ⊷465—Motion to dismiss appeal in bankruptcy, authorized by statute, will be denied (Bankruptcy Act, as amended May 27, 1926, §§ 24b, 25a [11 USCA §§ 47(b), 48(a)]).**

Where appeal is from judgment in bankruptcy allowing claim of over $500, and is taken in due form and within time fixed under Bankruptcy Act, as amended May 27, 1926, § 25a (11 USCA § 48[a]), motion to dismiss on ground that appellant did not pray an allowance of it in Circuit Court of Appeals, and that it was not allowed under section 24b (11 USCA § 47[b]), will be denied.

2. **Bankruptcy ⊷326—Member's claim against bankrupt association organized to loan money held not decreased by amounts paid by association more than two years before bankruptcy, and added to contract purchasers' notes.**

In bankruptcy proceeding of association organized to loan money, claim of member will not be decreased by amount of premiums to be paid by contract purchasers for privilege of borrowing money on such members' contracts, where such money was paid by association more than two years before adjudication in bankruptcy, and covered by notes and mortgages executed by such contract purchasers.

Appeal from the District Court of the United States for the District of Indiana.

In the matter of the Co-operative League of America and others, involuntary bankrupts. Petition by Reily C. Adams, trustee in bankruptcy, for a re-examination of the allowed claim of S. C. Williams. The referee's adverse decision was approved by the District Court, and claimant appeals. Reversed and remanded, with direction.

Harry Brokaw, of East Liverpool, Ohio, for appellant.

Solon J. Carter, of Indianapolis, Ind., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Appellee moves to dismiss this appeal for the reason that appellant did not pray an allowance of it in this court; nor did this court, in its discretion, allow it as provided by section 24b of the Bankruptcy Act, as amended May 27, 1926 (11 USCA § 47[b]).

[1] The appeal is from a judgment allowing a claim of over $500. Section 25a, as amended (11 USCA § 48[a]), provides for an appeal in such case. This appeal was taken in due form and within the time fixed, and the motion to dismiss is denied.

The Co-operative League of America was adjudged a bankrupt on October 19, 1923. On September 8, 1924, appellant filed his claim in the sum of $16,972, which was duly allowed. Some time afterward the trustee filed his petition with the referee for a re-examination of the claim of appellant. After setting forth that appellant had filed his claim in the amount of $16,972 on September 8, 1924, and that on said date it was allowed, the petition alleges:

"That said claim should not have been allowed, except in the amount of seventeen thousand one hundred eighty dollars ($17,-180), which amount was paid in to the Co-operative League of America by said claimant. That said claimant, prior to the bankruptcy of the League, received from the Co-operative League of America the following sums as profits on the sale of contracts owned by said creditor in certain series of contracts of said League, to wit: [Then follows a list of the contracts, with the profits or premiums received upon the sale thereof, aggregating the sum of $10,224.]

"That the bankrupt, Co-operative League of America, purported to be a common-law trust operating under a trust agreement; * * * that the business of said Co-operative League of America and its trustees consisted in soliciting and receiving payments under a complicated instrument denominated a three per cent. (3%) loan and home purchasing contract, which bears the large letters 'Face Value $———'; that the so-called face value was the amount ultimately to be paid in by the applicant and was in sums of five hundred dollars ($500) or multiples thereof; that one per cent. (1%) of said face value was to be paid in by the contract holder monthly; that the contracts were placed in series which were closed when the aggregate face value of the contracts herein reached the sum of one hundred forty thousand dollars ($140,000); * * * that when the fund in any series is equal to the face value of a contract, the contract holder in the series whose application was first in the order of time, if he had paid in ten per cent. (10%) of the face value of the contract, was entitled to borrow the face value of his contract at three per cent. (3%) interest per annum on an approved first mortgage on real estate, * * * or such contract holder in lieu of borrowing as aforesaid, might permit the League to sell his right to borrow the face value of his contract at three per

cent. (3%) per annum and receive the amount that he had paid in with a problematical bonus; * * * that the interest of each member in said Co-operative League of America was evidenced by a contract containing among others the provisions above referred to; that by small periodic payments said League accumulated a fund to be loaned to contract holders on the terms hereinbefore set out; that all of its funds available to be loaned were loaned only to contract holders owning matured contracts in said League; and that said League was a co-operative investment scheme composed of a large number of both borrowing and non-borrowing contract holders.

"That the profit paid to said S. C. Williams, as heretofore alleged, purported to be derived from the sale of the contracts owned by said S. C. Williams to third persons who desired to obtain a loan from the League in accordance with the plan of business as heretofore set out; that the purchasers of said contracts did not pay the profit or premium received by the said S. C. Williams, in cash, but that the League itself paid said profit or premium at the order of said purchaser and included the sums so paid in the face value of the loan to said purchaser; that as a result of the foregoing transaction the said S. C. Williams was paid said alleged profit or premium from the funds contributed by the other contract holders of said League and the value of the investment of said other contract holders was thereby jeopardized and diminished; that large numbers of the mortgages made by said League were or are not adequately secured so that petitioner is and has been unable to collect the full face value of said mortgages and that the estate of the bankrupt Co-operative League of America will not, in the opinion of petitioner, be able to pay in full to all contract holders the amounts that have been paid in to said League.

"That as a result of the foregoing facts it is inequitable that said S. C. Williams be allowed to retain said profits and at the same time prove his claim and participate in any distribution herein to the extent as other contract holders who have never received any profits of any kind or character from the League."

The prayer was: "That the said proof of debt of S. C. Williams be re-examined and allowed in the sum of seventeen thousand one hundred eighty dollars ($17,180) and no more, and that petitioner be ordered, upon the payment of a dividend to the creditors herein, to withhold from the dividend due on the said debt of seventeen thousand one hundred eighty dollars ($17,180) the sum of ten thousand two hundred twenty-four dollars ($10,224). * * *"

The evidence shows that during a period extending from April 27, 1920, to August 3, 1921, the appellant received the $10,224; and that the sums aggregating this amount were paid to him in the following manner: The League sold the contracts for appellant to third persons. These third persons agreed to pay for the contracts the amounts paid in by appellant plus a premium therefor. They did not pay cash to the League, but the League made mortgage loans to them, including therein the amount of the payments and the premium paid for each contract, and paid these premiums, less ten per cent thereof, to appellant. In other words, the contract purchasers borrowed from the League the amounts necessary to pay appellant his premiums.

The referee, concluding that said sums, amounting to $10,224, were paid from the funds contributed by other contract holders, and that the value of their investment was thereby jeopardized and diminished; that the trustee would not be able to collect the full face value of said mortgages; and that the League would not be able to pay in full to all contract holders the amounts that had been paid by them to the League, granted the trustee's petition for re-examination and allowed the claim in the sum of $17,072, but ordered the trustee, upon the payment of a dividend upon said claim, to withhold from such dividend the sum of $10,224. Upon petition to review the District Court approved the order of the referee.

[2] The part of the order complained of appears to have been based upon the theory that this $10,224 came out of the funds of the League contributed by the various members thereof. It is so alleged in the petition to re-examine the claim. The sums making up this $10,224 were premiums agreed to be paid by third parties to appellant. They were the amounts which the contract purchasers agreed to pay the contract holder for the privilege of stepping into the shoes of the latter and exercising the right, which he had, to borrow as the scheme provided.

The League, it is true, paid the premiums out of money it had on hand; that is, it drew checks against the funds in its hands, but the amounts of these checks were covered by the notes and mortgages executed to it by the contract purchasers. In effect, the League loaned to the contract purchasers the money to pay the premiums to appellant, and paid these premiums to appellant for the contract purchaser. The League had noth-

ing to do with the premiums except to collect them from the purchaser and pay them over to the appellant, taking out 10 per cent. for its services.

Appellee argues that as the League will be unable to collect its mortgages in full, and that large losses will ensue, the effect is that the premiums are paid out of the League's funds; that is to say, if the contract purchasers do not pay their notes to the League in full, the funds of the League will be diminished by the amount of money loaned to contract purchasers to pay appellant the premiums agreed to be paid by them.

While the evidence establishes that there were large losses—that the bankrupt estate will not probably pay over 50 per cent. of its indebtedness—the bookkeeper and office manager of the League before the receivership, and who has been employed by the receiver and trustee since, testified that he could not say whether the League sustained any loss through appellant's transactions. There is no evidence in the record to warrant the inference that such loss will be sustained. In no real sense can it be said that these premiums, agreed to be paid and thus paid by the contract purchasers to the contract holder, were funds belonging to the League or contributed thereto by the members thereof. This being the case, the foundation for the part of the order complained of disappears.

It is to be noticed that the last payment on the sums aggregating $10,224 was made more than two years before the adjudication in bankruptcy. The effect of the order complained of is to force the appellant to pay back to the League some or all of this $10,224. No ground is suggested upon which the trustee could sue for and recover these premiums, and we see no ground for such recovery.

The part of the order directing that dividends be withheld from appellant on his claim, up to the sum of $10,224, is erroneous.

Reversed and remanded, with direction to proceed in accordance with the views herein expressed.